United States Courts
Southern District of Texas
FILED

AUG 2 8 2008

Michael N. Milby, Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| Capco Energy, Inc. | § | Case No. 08-32282 |
| Capco Asset Management, Inc. | § | Case No. 08-32283 |
| Capco Operating Corporation | § | Case No. 08-32284 |
| Amco Energy, Inc. | § | Case No. 08-32285 |
| Amco Offshore, Inc. | § | Case No. 08-32286 |
| Amco Oil Company | § | Case No. 08-32288 |
| Solano Well Service, LLC | § | Case No. 08-32289 |
| Debtors. | § | |
| | § | (CHAPTER 11) |
| | § | |
| | § | Jointly Administered under |
| | § | Case No. 08-32282-H2-11 |

| | | |
|---|---|---|
| AMCO ENERGY, INC. f/k/a | § | |
| CAPCO OFFSHORE, INC.  and | § | |
| CAPCO ENERGY, INC. | § | |
| | § | **08-3310** |
| **Plaintiffs** | § | |
| vs | § | |
| | § | ADVERSARY NO. _____ |
| TANA EXPLORATION COMPANY LLC; | § | |
| TRT HOLDINGS, INC.; | § | |
| RYDER SCOTT COMPANY, L.P.; | § | |
| AND TRISTONE CAPITAL, LLC, | § | |
| | § | |
| **Defendants** | § | |

## AMCO ENERGY, INC f/k/a CAPCO OFFSHORE, INC. AND CAPCO ENERGY, INC.'S ORIGINAL COMPLAINT AGAINST TANA EXPLORATION COMPANY LLC, TRT HOLDINGS, INC., RYDER SCOTT COMPANY, L.P., AND TRISTONE CAPITAL, LLC

TO THE HONORABLE U.S. BANKRUPTCY COURT JUDGE:

Plaintiffs AMCO Energy, Inc. f/k/a Capco Offshore, Inc. and Capco Energy, Inc. (collectively

referred to as "Plaintiffs" or "Capco") file this Original Complaint against Tana Exploration

Company LLC., TRT Holdings, Inc., Ryder Scott Company, L.P., and Tristone Capital, LLC (collectively, "Defendants") and would show the following:

**Plaintiff**

        1.        Plaintiff AMCO, Energy, Inc. is a Texas crporation. AMCO Energy, Inc. was known as Capco Offshore, Inc. until August 23, 2007, when, pursuant to Article 4.04 of the Texas Business Corporations Act, it changed its name. AMCO Energy, Inc. is a wholly owned subsidiary of Capco Energy, Inc. AMCO Energy, Inc. is a debtor in the underlying bankruptcy proceeding.

        2.        Plaintiff Capco Energy, Inc. ("Capco Energy") is a Colorado crporation. Capco Energy is a debtor in the underlying bankruptcy proceeding.

**Defendants**

        3.        Defendant Tana Exploration Company LLC ("Tana") is a Delaware limited liability company authorized to do business in Texas. Its principal place of business is 1600 Smith Street, Suite 5000, Houston, Texas 77002. Tana can be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

        4.        Defendant TRT Holdings, Inc. ("TRT") is a Delaware corporation authorized to do business in Texas. Its principal place of business is 420 Decker Drive, Suite 100, Irving, Texas 75062. TRT can be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

        5.        Defendant Ryder Scott Company, L.P. ("Ryder") is a Texas limited partnership. Its principal place of business is 1100 Louisiana, Suite 3800, Houston, Texas 77002.

41534

2

Ryder can be served with process through its registered agent, Don P. Roesle, 1100 Louisiana, Suite 3800, Houston, Texas 77002.

6.      Defendant Tristone Capital, LLC ("Tristone") is a Texas limited liability company.  Its principal place of business is 216 16th St., Suite 1700, Denver, Colorado 80202. Tristone can be served with process through its registered agent, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

### Jurisdiction and Venue

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and 157.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (O).  Venue is proper in this Court because the main bankruptcy case is pending here.

### Facts

8.      Capco Energy is engaged in the acquisition, exploration, development, production, and sale of oil, gas, and natural gas liquids in the United States.  Most of its properties are located in Oklahoma, Texas, and the Texas Gulf Coast.  As of December 31, 2005, Capco Energy had interests in four (4) producing offshore wells.    AMCO Energy, Inc. is a wholly owned subsidiary of Capco Energy.

9.      Tana is in the business of oil, gas, and mineral exploration and development. Since its inception in 2002, Tana has acquired, traded, and negotiated at least 82 leases in the Gulf of Mexico and has drilled at least 63 offshore wells.  Upon information and belief, Tana's 82 leases contain 376,567 gross and 270,476 net acres in which Tana has an average working interest of 65%. At all relevant times, Tana had a significantly larger offshore presence and more offshore experience than Plaintiffs.

3

10.    In late 2005 or early 2006, Tana decided to sell its oil, gas, and mineral interests associated with fourteen (14) offshore fields and twenty (20) wells located in the Gulf of Mexico shelf.  Tana claimed that it wanted to sell these interests to fund its ongoing and extensive E&P growth activities.  The non-contiguous properties Tana sought to divest comprised approximately 36,000 net acres in Louisiana and in the federal waters offshore of Louisiana and Texas.  These properties stretched from the Brazos A-2 property, almost due south of Houston eastward to the South Pass 26 property, southeast of New Orleans, and included producing leaseholds in the Brazos, High Island, West Cameron, Eugene Island, Ship Shoal, West Delta, and South Pass areas.

11.    To facilitate the sale of its properties, Tana engaged Tristone to provide transaction and advisory services and technical support.  Tristone is an investment banking firm with global clients in, *inter alia*, the energy exploration and development and oilfield services industries. Tana also engaged Ryder in connection with the sale and marketing of its properties, requesting that Ryder prepare a reservoir analysis and report evaluating the hydrocarbon reserves, production histories, and cash flows of the offered properties (the "Ryder Report").  Ryder has been in business since 1937 and considers itself to be one of the oldest and largest reservoir-evaluation consulting firms in the industry.  Both Tristone and Ryder received significant compensation for their services. Upon information and belief, Tristone's compensation was, at least in part, contingent upon a successful sale of Tana's properties.

12.    To further Defendants' divestiture efforts, Defendants prepared a Confidential Evaluation Brochure dated March 2006 which contained numerous representations concerning the offered properties.  These representations included, but were not limited to, representations regarding

4

the offered properties' hydrocarbon reserves, historical production, geological and engineering characteristics, financial performance, operations, legal status, and production marketing.  The Confidential Evaluation Brochure is incorporated herein for reference solely for the purpose of demonstrating the substance, nature, and subject matter of the representations made to Plaintiffs by Defendants as described below.  Nothing contained in the Confidential Evaluation Brochure shall be deemed a judicial admission by Plaintiffs.

13.     Defendants proceeded to market Tana's properties using, *inter alia*, the Confidential Evaluation Brochure and/or certain information from the Ryder Report.  In April 2006, Plaintiffs' principal saw Tristone's Internet posting regarding the Tana offering and contacted Tristone.  Plaintiffs were particularly interested in the properties Tana sought to divest because, as a relatively small company, acquisition of a diverse portfolio of offshore producing properties, such as those being marketed by Defendants, was important to facilitate Plaintiffs' future growth and development.

14.     After Plaintiffs' initial contact with Tristone, Plaintiffs received a flyer with additional information about the offered properties and were asked by Tristone to sign a confidentiality agreement. After executing the confidentiality agreement, Plaintiffs received a copy of the Confidential Evaluation Brochure for review.  Plaintiffs reviewed the Confidential Evaluation Brochure and also sent representatives to the "Tristone Data Room" in late April 2006 to review the records provided by Defendants.  The "Tristone Data Room" was located in Tristone's offices and included, among other things, certain records underlying the Ryder Report and the Confidential Evaluation Brochure.  These underlying records included, but were not limited to, records regarding the offered properties' hydrocarbon reserves, historical production, geological and engineering

5

characteristics, financial performance, operations, legal status, and production marketing.

15.     While visiting the Tristone Data Room, Defendants made a PowerPoint presentation to Plaintiffs.  The PowerPoint presentation and the parties' discussions included, but were not limited to, representations regarding the properties' hydrocarbon reserves, historical production, geological and engineering characteristics, financial performance, operations, legal status, and production marketing.   Defendants also expressly and impliedly represented that the records and information provided by them to Plaintiffs, including, but not limited to, the hydrocarbon reserves reflected in the Confidential Evaluation Brochure, the Ryder Report, and the records contained in the Tristone Data Room, were accurate, complete, reliable, and compiled in accordance with acceptable industry standards applicable to petroleum engineers and entities engaged in the business of operating and marketing oil and gas properties.

16.     It was intended by Defendants that Plaintiffs would rely on the records made available to Plaintiffs, including, but not limited to, those records contained within the Tristone Data Room, and Plaintiffs did reasonably rely on these records to their detriment.   For example, Defendants represented that a significant portion of the properties' represented hydrocarbon reserves were classified as proved developed producing ("PDP") reserves.   Proved reserves are those quantities of petroleum which, by analysis and geological engineering data, can be measured with reasonable certainty to be commercially recoverable from a given date forward, from known reservoirs, and under current economic conditions, operating methods and government regulations. Proved reserves are classified as developed or undeveloped.   Reserves are considered proved if the commercial producibility of the reservoir is supported by the actual production and formation tests. The term "proved" refers to actual quantities of petroleum reserves and not just the productivity of

the well or reservoir. Defendants' knew their representations concerning the PDP reserves were particularly important to Plaintiffs who did not have the manpower and finances available to further develop the properties Tana sought to divest.    In addition to making express representations regarding significant hydrocarbon reserves, Defendants further represented that the properties were low cost with significant profit margins.  These and other representations made by Defendants were false.

17.    On May 3, 2006, in reliance on the representations made by Defendants, Plaintiffs submitted a $161 million bid to acquire all 14 properties offered by Tana, including the Eugene Island 85 B-1 property.  Subsesequent to submitting their initial bid, Plaintiffs were informed that the Eugene Island 85/98 property was being withdrawn from the divestiture package because it was having "problems."  Capco was invited to submit a revised bid.  On May 12, 2006, based on Defendants' continued representations that the remaining properties did not have "problems," Capco submitted a revised bid in the amount of $83 million to acquire the following thirteen properties offered for sale in the Confidential Evaluation Brochure: Ship Shoal 144/145/159; Eugene Island 159; West Cameron 22/23; West Delta 62; Ship Shoal 52; Brazos A-2; West Cameron 102; High Island A538; High Island A282; South Pass 26; Eugene Island 148; Ship Shoal 167; and Eugene Island 44/45.  This bid excluded the Eugene Island 85/98 property.

18.    Between May 3, 2006 and May 12, 2006 Defendants visited Plaintiffs' office and further discussed the offered properties with Defendants.  Defendants not only reiterated the representations described above, but also expressly and/or impliedly represented that the hydrocarbon reserve numbers were conservative.

19.    Tana accepted Plaintiffs' bid and, on or about June 2, 2006, Tana and Capco

41534

7

Offshore executed the Purchase and Sale Agreement Between Tana Exploration Company LLC as Seller and Capco Offshore, Inc. as Buyer (the "PSA"). (The properties and other interests covered by the PSA, excluding Eugene Island 85/98, are hereinafter referred to as the "Properties.")

   20. Plaintiffs relied on Defendants' representations in signing the PSA and closing on the Properties, and as explained herein, Defendants' representations were false. For example, at no time did Defendants tell Plaintiffs that the records and information provided were incomplete and inaccurate in many material respects and/or that Plaintiffs could or should expect an extraordinary variance from the hydrocarbon reserve numbers provided by Defendants. Upon information and belief, Defendants knew and/or should have known that the hydrocarbon reserve numbers were overstated and unreliable, and intentionally withheld from Plaintiffs material information evidencing these facts, including, but not limited to, information regarding the Properties' hydrocarbon reserves, historical production, geological and engineering characteristics, financial performance, and operations.

   21. Following execution of the PSA, Capco embarked on further due diligence analysis of the Properties and of the proposed transaction. This due diligence included review of records concerning the Properties provided by the Defendants, direct communications with the Defendants, and a June 27 – 28, 2006 environmental and structural assessment of several of the Properties. Capco also relied heavily on the Ryder Report. Plaintiffs felt comfortable doing so because they had a pre-existing relationship with Ryder, having hired Ryder to advise them in connection with prior acquisition assessments and to complete reserve reports on various properties, unrelated to the Tana acquisition, including the immediately preceding year, 2005. At all times material hereto, Plaintiffs had a professional relationship with Ryder.

41534

22.     To facilitate purchase of the Properties, Plaintiffs had to obtain financing. To do this, Capco Energy approached Union Bank of California, N.A. ("UBC") seeking $50,000,000.00. In connection with its efforts to obtain financing to close the Tana acquisition, Plaintiffs introduced UBC to Ryder and facilitated direct communications between Tana and Ryder regarding the Properties and the proposed transaction with Tana. In doing this, Plaintiffs relied upon and acted within the context of their pre-existing professional relationship with Ryder. Plaintiffs approached the Ryder personnel responsible for handling their account to arrange meetings between Ryder and UBC.

23.     Plaintiffs participated in meetings with UBC and Ryder during which Ryder once again provided extensive information and made detailed representations regarding, among other things, each of the Properties' hydrocarbon reserves, historical production, geological and engineering characteristics, financial performance, operations, legal status, and production marketing. Ryder again  expressly and impliedly represented that the records and information provided by Defendants  to Plaintiffs and UBC including, but not limited to, the hydrocarbon reserves reflected in the Confidential Evaluation Brochure, the Ryder Report, and the records made available to Plaintiffs and to UBC, were accurate, complete, reliable, and compiled in accordance with acceptable industry standards applicable to petroleum engineers and entities engaged in the business of operating oil and gas properties. UBC's engineer posed specific questions to Ryder, and Ryder answered these questions and provided records to support its answers. Ryder again expressly and/or impliedly represented that the hydrocarbon reserve numbers were conservative. As with Defendants' previous representations, Plaintiffs relied on Ryder's representations in obtaining financing and proceeding with the acquisition of the Properties. These and other representations

41534

were false and, upon information and belief Ryder knew and/or should have known that the hydrocarbon reserve numbers were overstated and unreliable, and intentionally withheld from Plaintiffs material information evidencing these facts, including, but not limited to, information regarding the Properties' hydrocarbon reserves, historical production, geological and engineering characteristics, financial performance, and operations. At no time did Ryder tell Plaintiffs that the records and information provided were incomplete and inaccurate or that Plaintiffs could or should expect an extraordinary variance from the hydrocarbon reserve numbers provided by Defendants. Upon information and belief, Defendants, including but not limited to Ryder, knew and/or should have known that the hydrocarbon reserve numbers were overstated and unreliable, and intentionally withheld from Plaintiffs material information evidencing these facts, including but not limited to information regarding the Properties' hydrocarbon reserves, historical production, geological and engineering characteristics, financial performance, and operations.

24.     Shortly before the August 31, 2006 closing, Plaintiffs expressed concern regarding one of the Properties and suggested the parties consider a revision of the purchase price. Tana declined this suggestion and expressly denied there was a problem with the Properties' performance sufficient to impact the purchase price. To the contrary, Tana expressly represented that the Properties' performance was improving and, by fax dated August 28, 2006, stated that the August 2006 production was estimated to be $6 million. These representations were intended to induce and did induce Plaintiffs to proceed to closing on August 31, 2006. These and other representations made by Defendants were false. The August 2006 production was $3.4 million, a fact which upon information and belief, Defendants knew and/or should have known on August 28, 2006. Plaintiffs relied to their detriment on Defendants' representations regarding the Properties' August 2006

41534

10

production and would not have closed the acquisition on August 31, 2006, but for these misrepresentations.

25.     On August 31, 2006, in reliance on the representations made by Defendants, the acquisition of the Properties closed and the parties entered into a Bill of Sale transferring Tana's interests in the Properties to Capco. The acquisition price was $83 million. Capco received a credit of approximately $20 million for production occurring from April 1, 2006 through August 31, 2006. At the closing, Plaintiffs simultaneously sold twenty-five percent (25%) of the interest acquired in the Properties to a partner in the transaction, Omnimex Petroleum, Inc. ("Omnimex").

26.     In 2007, Plaintiffs retained Ryder to update the reserve analysis of the Properties and some of their other interests, as of December 31, 2006. The resulting report dated May 31, 2007, showed less that $12 million in PDP reserves, a shocking decline of $35 - $40 million, net of interim production. Neither interim production nor price fluctuations explain this decline. It was upon receipt of this report that Plaintiffs first discovered that the numerous representations made by Defendants regarding the Properties' hydrocarbon reserves had been false and grossly overstated. The false and unreliable nature of the representations regarding the Properties is demonstrated by a comparison of the Properties' represented PDP reserves with those determined by Ryder to be present shortly after closing as reflected in the December 31, 2006, Reserve Report prepared by Ryder for Plaintiffs. This comparison is set forth in Exhibit "A" attached and incorporated herein.1

---

1       Although the reserves attributable to the Eugene Island 159-A property are denominated as Proved Developed Non-Producing reserves ("PDNP") in the Confidential Evaluation Brochure and Ryder Report, they were actually producing as of the date of the PSA and closing. Defendants, therefore, maintained that such reserves should be treated as PDP reserves for the purpose of establishing the purchase price.
41534

27.     The discrepancy between the PDP reserve numbers reflected in the Confidential Evaluation Brochure and Ryder report, on the one hand, and the December 31, 2006, Reserve Report prepared by Ryder for Plaintiffs, on the other hand, is of such a magnitude to defy explanation by simple error or mistake and indicates that Defendants actually knew and/or should have known that the representations regarding PDP reserves made to Plaintiffs prior to closing transaction were false.

28.     The negative impact of the Tana transaction and the acquisition of the Properties has been severe and extensive, causing substantial damages to Plaintiffs. These damages include, but are not limited to, actual damages resulting from the almost complete loss of the $83 million purchase price and/or the receipt of assets worth substantially less than the $83 million purchase price. In addition, Plaintiffs have incurred substantial special damages resulting from, *inter alia*: (a) the almost complete destruction of Plaintiffs' business;  (b) being forced into this Bankruptcy proceeding;  (c) the inability to secure financing and/or funding for other opportunities; and/or (d) the loss of substantial other business opportunities, including but not limited to a pending transaction with ConocoPhillips.  In addition, Plaintiffs incurred additional damages attributable to their efforts to improve the performance of the Properties and bring the Properties' post-closing production into line with Defendants' pre-closing representations.

### Agency Allegations

29.     In addition to acting on their own behalf, Tristone and Ryder were acting as agents for Tana having the express, apparent, and/or implied authority to engage in the acts described and complained of herein.  At all material times, they were acting within the course and scope of this agency.  Tristone and Ryder (and/or the principals and/or employees of each) benefited financially

41534

from the actions of Defendants, acted with knowledge of Defendants' improper conduct, and ratified this conduct. In addition to acting on its own behalf, Tana was acting as an agent for TRT having the express, apparent, and/or implied authority to engage in the acts described and complained of herein. At all material times, it was acting within the course and scope of this agency. Tana (and/or its principals and/or employees) benefited financially from the actions of Defendants, acted with knowledge of Defendants' improper conduct, and ratified this conduct. Tristone, Ryder, Tana, and TRT were also engaged in a conspiracy as alleged herein and each is responsible for the actions of the others as if they themselves committed the acts about which Plaintiffs complain and each is jointly and severally responsible for Plaintiffs' damages.

### Causes of Action

**A.      Statutory Fraud**

30.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Defendants' conduct, described above and incorporated herein by reference, constitutes statutory fraud under TEX. BUS. & COM. CODE §27.01. The transaction about which Plaintiffs complain involves the sale of oil, gas, and mineral interests. The August 31, 2006, closing transferred the ownership of these oil, gas, and mineral interests to Capco as evidenced by the Bill of Sale and its attachments. Defendants made false representations of fact and/or false promises, and/or benefited by not disclosing that another's representations or promises were false. Defendants did this to induce Plaintiffs to buy the Properties.   Plaintiffs relied upon Defendants' false representations and/or promises in buying the Properties. Plaintiffs' reasonable reliance has caused them damages for which Defendants are jointly and severally liable.

41534

**B.      Common Law Fraud and Fraudulent Inducement**

          31.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Defendants' conduct, described above and incorporated herein by reference, constitutes common law fraud and fraudulent inducement. Defendants made material false representations to Plaintiffs. Defendants knew their representations were false and/or made their representations recklessly, as a positive assertion, and without knowledge of their truth. Defendants made their representations with the intent that Plaintiffs rely upon them. Plaintiffs reasonably relied upon Defendants' representations and acted based on these representations. Plaintiffs would not have purchased the Properties but for Defendants' representations. As a result of their reasonable reliance on Defendants' representations, Plaintiffs suffered the injury for which they now sue and for which Defendants are jointly and severally liable.

**C.      Fraud by Nondisclosure**

          32.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Defendants' conduct, described above and incorporated herein by reference, constitutes fraud by nondisclosure or fraudulent concealment. Defendants made representations to and/or concealed facts from and/or failed to disclose facts to Plaintiffs thereby creating a substantially false impression. The facts Defendants concealed were material. Defendants knew Plaintiffs were ignorant of the undisclosed facts and did not have an equal opportunity to discover the truth about these facts. Defendants intentionally remained silent and intended that Plaintiffs would rely upon their nondisclosure/concealment. Plaintiffs did reasonably rely on the nondisclosure/concealment. As a result, Plaintiffs suffered the damages for which they now sue and for which Defendants are jointly and severally liable.

41534

**D.     Negligent Misrepresentation**

      33.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Defendants' conduct, described above and incorporated herein by reference, constitutes negligent misrepresentation. Defendants made false representations and/or supplied false information to Plaintiffs in connection with the sale of the Properties. These representations were made in the course of Defendants' business or in transactions in which Defendants had an interest. Defendants did not exercise reasonable care or competence in obtaining and/or communicating information to Plaintiffs. Plaintiffs justifiably relied upon Defendants' representations and information provided by Defendants and purchased the Properties. Defendants' negligent misrepresentations proximately caused Plaintiffs' injury for which they now sue and for which Defendants are jointly and severally liable.

**E.     Breach of Contract**

      34.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Tana's conduct, described above and incorporated herein by reference, constitutes breach of contract. Tana entered into the PSA with Capco Offshore and on August 31, 2006, closed the transactions anticipated by the PSA executing the Bill of Sale which incorporated the terms of the PSA. Plaintiffs performed under the terms of the PSA and the Bill of Sale paying more than $81 million for the interests purchased. Tana breached the PSA which proximately caused injury to Plaintiffs.

**F.     Breach of Express and Breach of Implied Warranties**

      35.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally, and/or pleading in the alternative, Defendants' conduct, described above and

41534

incorporated herein by reference, constitutes breach of express warranties provided by Defendants. Defendants warranted, *inter alia*, that the records it provided were in all material respects complete and accurate and that the representations and warranties provided by Tana did not contain any untrue statements of material fact.   This was not the case.  Defendants breached these and other warranties made to Plaintiffs involving their affirmations of fact promises and/or descriptions.  As a proximate result of Defendants' breach of their express and implied warranties, Plaintiffs have suffered damages for which they now sue.

**G.      Mutual Mistake**

36.   Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Plaintiffs are entitled to rescission of the Bill of Sale and return of the total purchase price paid for the Properties because there was a mutual mistake between the parties as to a material term of their agreement.   At all material times, the parties believed that the measure of the PDP reserves provided by Defendants were accurate and reliable. The PDP reserve numbers are factual statements describing the volume and value of minerals in the ground which are subject to production.    The PDP reserve numbers were material to Plaintiffs' decision to purchase the Properties.  As described above, the measure of the PDP reserves were inaccurate and unreliable.  Because both parties were operating under the assumption that the Defendants' measure of the PDP reserves was accurate and reliable when it was not and Plaintiffs are entitled to rescission of the Bill of Sale and return of the purchase price.

**H.      Deceptive Trade Practices Act Claims**

37.   Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, each Defendant's conduct, described above and

41534

16

incorporated herein by reference, constitutes violations of TEX. BUS. & COMM. CODE §§ 17.41 *et seq.*
Plaintiffs are consumers who acquired or sought to acquire goods and/or services by purchase or
lease pursuant to TEX. BUS. & COMM. CODE § 17.45(4).  Defendants are corporations or other
professional associations that can be sued under the DTPA.  Defendants committed wrongful acts
and violated the DTPA by: (1) engaging in false, misleading, or deceptive acts and practices relied
on by Plaintiffs to their detriment including:

>   (a)    causing confusion or misunderstanding as to the source,
>   sponsorship, approval, or certification of goods or services (TEX. BUS.
>   & COMM. CODE § 1746(b)(2));
>
>   (b)    representing that goods or services have sponsorship,
>   approval, characteristics, ingredients, uses, benefits, or qualities they
>   do not have (TEX. BUS. & COMM. CODE § 1746(b)(7));
>
>   (c)    representing that goods or services are of a particular standard,
>   quality or grade or that goods are of a particular style or model when
>   they are of another (TEX. BUS. & COMM. CODE § 1746(b)(7));
>
>   (d)    representing that an agreement involves or confers rights,
>   remedies, or obligations, that it does not have or involve or that are
>   prohibited by law (TEX. BUS. & COMM. CODE § 1746(b)(12));
>
>   (e)    representing that a warranty or warranty confers or involves
>   rights or remedies that it does not have or involve (TEX. BUS. &
>   COMM. CODE § 1746(b)(20) and
>
>   (f)    failing to disclose information about goods or services that
>   were known at the time of the transaction which failure to disclose
>   was intended to induce Plaintiffs to enter into a transaction that
>   Plaintiffs would not have entered into had the information been
>   disclosed (TEX. BUS. & COMM. CODE § 1746(b)(24)).

(2) breaching express warranties to Plaintiffs TEX. BUS. & COMM. CODE § 1750(a)(2); and (3)
engaging in unconscionable actions or courses of action that took advantage of Plaintiffs' lack of
knowledge, ability, and /or experience to a grossly unfair degree TEX. BUS. & COMM. CODE § 1750
41534

(a)(3) and TEX. BUS. & COMM. CODE § 1745(5).  Defendants' actions were a producing cause of

injury to Plaintiffs.  Defendants knowingly and/or intentionally violated the DTPA inasmuch as, at

the time of the acts and practices described above, they had actual awareness of the falsity,

deception, or unfairness of the acts and practices and/or they had actual awareness of the falsity,

deception, or unfairness and acted with the specific intent of having Plaintiffs detrimentally rely on

the falsity, deception and/or unfairness.  As a result, Plaintiffs are entitled to additional damages as

described in TEX. BUS. & COMM. CODE § 1750(b)(1).  It was impractical for Plaintiffs to give

Defendants written notice pursuant to TEX. BUS. & COMM. CODE § 15.505(a) because Plaintiffs

needed to file suit to prevent the expiration of the statutes of limitation.  Therefore, written notice

was not required.  More specifically,  the two year limitation period applicable to some of Plaintiffs'

claims began on August 31, 2006.

## I.      Professional Negligence

38.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim.

Additionally and/or pleading in the alternative, Ryder's conduct, described above and incorporated

herein by reference, constitutes professional negligence. Ryder owed a duty to Plaintiffs as a result of

the professional relationship existing between them.  Ryder breached its duties to Plaintiffs inasmuch

as it failed to act as would an ordinary and prudent petroleum engineering and consulting firm such

as Ryder in the same or similar circumstances.  The acts and omissions of Ryder that constitute

professional negligence include, but are not limited to, the following:  failing to properly and/or

accurately analyze, evaluate, and /or measure the Properties and their stated hydrocarbon reserves;

failing to verify and/or ascertain the accuracy and completeness of the records used by it to analyze,

evaluate, and /or measure the Properties and their stated hydrocarbon reserves; failing to advise

41534

Plaintiffs regarding the incompleteness and/or unreliability of records relating to the Properties and their stated hydrocarbon reserves; representing to Plaintiffs that the stated hydrocarbon reserves were conservative when they were, in fact, highly speculative; failing to advise Plaintiffs of a conflict of interest between Plaintiffs and Tana; allowing Plaintiffs to rely on its work, work product, and representations regarding the Properties while failing to advise Plaintiffs to secure the services of an independent engineering firm; failing to ascertain and/or advise Plaintiffs that the geological and/or engineering characteristics of the Properties were such that they would experience a precipitous decline in production in the short-term. Ryder's breach of duty to Plaintiffs proximately caused Plaintiffs' damages about which they complain in this lawsuit. To the extent that a period of limitations will expire within 10 days of the date of filing and, because of time constraints, a Certificate of Merit described in TEX. CIV. PRAC. & REM. CODE § 150.002(a) could not be prepared and filed contemporaneously with the filing of this Complaint. Plaintiffs will comply with TEX. CIV. PRAC. & REM. CODE § 150.002(b).

**J.      Breach of Fiduciary Duty**

39.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Ryder's conduct, described above and incorporated herein by reference, constitutes a breach of fiduciary duty to Plaintiffs. Ryder had a special relationship of trust with Ryder and Ryder owed Plaintiffs a fiduciary duty. Ryder has breached its fiduciary duty to Plaintiffs which has proximately caused Plaintiffs' damages and about which they complain in this lawsuit.

**K.      Civil Conspiracy/Concert of Action**

40.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim.

41534

Additionally and/or pleading in the alternative, Defendants' conduct, described above and incorporated herein by reference, constitutes civil conspiracy. As set forth above, Defendants reached an agreement and/or had a meeting of minds to injure Plaintiffs by not disclosing the true value of the Properties, misleading Plaintiffs, hiding records and other information, and depriving Plaintiffs of records and other information necessary to assess the true value of the Properties. Defendants have committed one or more unlawful, overt acts including failing to disclose the true value of the properties, hiding records, and other information from and misleading Plaintiffs. Defendants have done these things to accomplish the unlawful purposes set forth in the causes of action described above. Defendants' conduct proximately caused injury and damages to Plaintiffs for which Defendants are jointly and severally liable.

**L.      Unjust Enrichment**

41.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Additionally and/or pleading in the alternative, Defendants' conduct, described above and incorporated herein by reference, gives rise to a claim for unjust enrichment. As set forth above, Defendants have been unjustly enriched, at the expense of Plaintiffs through their possession of the funds paid at the August 31, 2006 closing which funds rightfully belongs to Plaintiffs. Defendants obtained the closing proceeds through the taking of undue advantage of Plaintiffs and they should be required to disgorge all monies obtained from and/or through Plaintiffs, including but not limited to the purchase price, deposits, commissions, and professional fees. Plaintiffs have sustained damages as a result of Defendants' acts, for which they now sue.

<u>**Malice**</u>

42.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim.

41534

Defendants have acted with "malice" as that term is defined in Texas law. Plaintiffs are thus entitled to recover punitive damages from Defendants.

### Discovery Rule

43.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. To the extent that any party pleads the statute of limitations or any other defense based on the passage of time, Plaintiffs hereby assert the "discovery rule." This suit has been filed within two years of Plaintiffs' knowledge of such facts that would lead a reasonably prudent person to discover the Defendants' wrongful acts.

### Fraudulent Concealment

44.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Defendants acted fraudulently to conceal from Plaintiffs the facts giving rise to the cause of action asserted herein inasmuch as Defendants had actual knowledge that a wrong had occurred and concealed facts necessary for Plaintiffs to know that the wrong had occurred.

### Conditions Precedent

45.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Plaintiffs have fulfilled or will timely fulfill all conditions precedent to their recovery in this action.

### Attorneys' Fees

46.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth verbatim. Plaintiffs have retained the services of the law firm Nickens, Keeton, Lawless, Farrell & Flack to represent them in this case. On July 14, 2008, this Court entered an Order appointing Nickens, Keeton, Lawless, Farrell & Flack as Special Counsel to the Debtor for purposes of bringing this lawsuit. Plaintiffs are entitled to recover attorneys' fees in this case pursuant to Tex. CIV. PRAC. &

41534

REM. CODE § 38.001(8), TEX. BUS. & COMM. CODE § 17.50(d), and/or other applicable law. Accordingly, Plaintiffs seek an award of their reasonable and necessary attorneys' fees, expert fees, costs of court, and other reasonable expenses incurred in prosecuting this lawsuit.

### Jury Demand

47.     Plaintiffs respectfully request a trial by jury.

### Prayer

48     Plaintiffs pray that Defendants be cited to appear and answer herein and that, upon final hearing, Plaintiffs recover from Defendants, jointly and severally:

A.      Actual damages;

B.      Special damages;

C.      Exemplary and punitive damages;

D.      Additional damages pursuant to TEX. BUS. & COMM. CODE § 1750(b)(1);

E.      Rescission of the Bill of Sale, and a return of all monies paid by Plaintiffs in connection therewith;

F.      Pre – judgment and post-judgment interest;

G.      Costs of court;

H.       Attorneys' fees;

I.      Expert fees; and

G.      Such further relief to which Plaintiffs may show themselves entitled.

41534

Respectfully submitted,

_____

Jett Williams III
State Bar No. 21554000
NICKENS KEETON LAWLESS
          FARRELL & FLACK LLP
600 Travis Street, Suite 7500
Houston, TX 77002
(713) 571-9191
(713) 571-9652 (Fax)

*Attorney-in-Charge for Plaintiffs AMCO*
*Energy, Inc. f/k/a Capco Offshore*
*Exploration, Inc. and Capco Energy*
*Company, Inc.*

41534

| TANA Acquisition Ryder Scott Net Proved Only | | | | |
|---|---|---|---|---|
| | Net Proved as of 4/1/2006 PDP | Operations from 4/1/2006 to 12/31/2006 | Net Proved as of 12/31/2006 PDP | Variance |
| Field | Equiv (MMCFE) | Equiv (MMCFE) | Equiv (MMCFE) | Equiv (MMCFE) |
| Brazos A-2 | 395 | 206 | 0 | 189 |
| Eugene Island 44 | 147 | 29 | 18 | 101 |
| Eugene Island 148 | 542 | 473 | 354 | -285 |
| Eugene Island 159* | 2752 | 691 | 0 | 2061 |
| High Island A-282 | 381 | 530 | 414 | -563 |
| High Island A-538 | 1128 | 404 | 297 | 427 |
| Ship Shoal 52 | 506 | 202 | 0 | 304 |
| Ship Shoal 145/159 | 2082 | 837 | 615 | 630 |
| Ship Shoal 167 | 297 | 168 | 308 | -179 |
| South Pass 26 | 644 | 144 | 262 | 238 |
| West Cameron 22/23 | 603 | 342 | 166 | 95 |
| West Cameron 102 | 841 | 1012 | 0 | -171 |
| West Delta 62 | 1537 | 592 | 0 | 945 |
| **Total** | **11855** | **5630** | **2435** | 3790 |

*Although the reserves attributable to the Eugene Island 159-A property are denominated as Proved Developed Non-Producing reserves ("PDNP") in the Confidential Evaluation Brochure and 4/1/06 Ryder Report, they were actually producing as of the date of the PSA and closing.  Defendants therefore maintained that such reserves should be treated as PDP (or "producing") reserves for the purpose of establishing the purchase price.



EXHIBIT
A

08-3310

| B104<br>(Rev.<br>2/92) | **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | ADVERSARY PROCEEDING<br>(Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| AMCO ENERGY, INC. f/k/a CAPCO OFFSHORE, INC. and CAPCO ENERGY, INC. | TANA EXPLORATION COMPANY LLC, TRT HOLDINGS, INC., RYDER SCOTT COMPANY, L.P., and TRISTONE CAPITAL, LLC |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br><br>Jett Williams III; Nickens Keeton Lawless Farrell & Flack LLP, 600 Travis St., Suite 7500, Houston, TX 77002; 713-571-9191 | **ATTORNEYS** (If Known) |

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☑ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Core Adversary Proceeding to recover damages for among other things, fraud, statutory fraud, violations of the Texas Deceptive Trade Practices Act, negligent representation breach of contract, breach of warranty, mutual mistake, professional negligence, breach of fiduciary duty conspiracy and unjust enrichment in connection with Plaintiffs' acquisition of thirteen offshore oil and gas interests.

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☑ **454** To Recover Money or Property

☐ **435** To Determine Validity, Priority, Extent of a Lien or Other Interest in Property

☐ **458** To obtain approval for the sale of both the interest of the estate and of a co-owner in property

☐ **424** To object or to revoke a discharge 11 U.S.C. § 727

☐ **455** To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan

☐ **426** To determine the dischargeability of a debt 11 U.S.C. § 523

☐ **434** To obtain an injunction or other equitable relief

☐ **457** To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ **456** To obtain a declaratory judgment relating to any of the foregoing causes of action

☐ **459** To determine a claim or cause of action removed to a bankruptcy court

☐ **498** Other (specify)

**ORIGIN OF PROCEEDINGS**
(Check one box only.)
☑ 1 Original Proceeding  ☐ 2 Removed Proceeding  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another Bankruptcy Court  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| **DEMAND** | NEAREST THOUSAND<br>$83,000,000.00 + | OTHER RELIEF SOUGHT<br>Recision, punitive damages, attorneys' fees & costs | ☑ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR<br>AMCO Energy f/k/a Capco Offshore, Inc. & Capco Energy, Inc. | BANKRUPTCY CASE NO.<br>Jointly Administration under Case No. 08-32282-H2-11 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of Texas | DIVISIONAL OFFICE<br>Houston | NAME OF JUDGE<br>Judge Steen |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| **FILING FEE**   (Check one box only.) | ☑ FEE ATTACHED | ☐ FEE NOT REQUIRED | ☐ FEE IS DEFERRED |
|---|---|---|---|
| DATE<br>08/28/2008 | PRINT NAME<br>Jett Williams III | SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |